**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

CHARITY DENNARD,

                              Plaintiff,

           -vs-                            DECISION AND ORDER

CAROLYN W. COLVIN, *Acting Commissioner of*     17-CV-6029-CJS
*Social Security*,

                              Defendant.

---

**APPEARANCES**

For the Plaintiff:                  Amy C. Chambers, Esq.
                                     Kenneth R. Hiller, Esq.
                                     Law Offices of Kenneth Hiller, PPLC
                                     6000 North Bailey Avenue Suite 1A
                                     Amherst, NY 14226
                                     (716) 564-3288

For the Defendant:               Emily Maxine Fishman, Esq.
                                     Social Security Administration
                                     Office of General Counsel
                                     26 Federal Plaza Room 3904
                                     New York, NY 10278
                                     (212) 264-3650

                                     Kathryn L. Smith, A.U.S.A.
                                     Office of the United States Attorney
                                     for the Western District of New York
                                     100 State Street, 5th Floor
                                     Rochester, New York 14614
                                     (585) 263-6760

## INTRODUCTION

**Siragusa, J.** This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Charity Dennard. ("Plaintiff") for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Now before the Court is Plaintiff's motion for judgment on the pleadings, filed on July 7, 2017, ECF No. 11, and the Commissioner's cross-motion for judgment on the pleadings, filed on August 24, 2017, ECF No. 13. The Court has considered the issues raised in the papers, in Plaintiff's reply, and at oral argument, held on February 8, 2018. Defendant's cross-motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied. The Commissioner's decision is affirmed pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

Having an onset date of disability of January 17, 2012, Plaintiff filed a claim on April 26, 2012, for SSDI and SSI benefits. Upon denial, Plaintiff requested and received a hearing on August 26, 2013, before an Administrative Law Judge ("ALJ"). On September 25, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. R. 150. On December 20, 2014, the Appeals Counsel remanded the case to the ALJ for a rehearing on Plaintiff's residual functional capacity. R. 166.

Following remand, the same ALJ held a hearing on May 5, 2015, and issued a decision on August 20, 2015. R. 16. In that decision, the ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with certain exceptions. Based on the testimony of a vocational expert ("VC"), the ALJ found that although Plaintiff could not perform her past relevant work, she could perform other jobs existing in significant numbers in

the national economy. R. 13. This determination ultimately became the Commissioner's final judgement on November 14, 2016, when the Appeals Council denied review. R. 1.

## STANDARD OF LAW

The pertinent statute states, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The issue the Court must determine is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (citations omitted). Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(c)(4), formerly designated as 20 C.F.R. § 404.1527(d)(4)). Nevertheless,

> [a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527[(c)](2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id*. The regulations also specify that the Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.' *Id*.; *accord* 20 C.F.R. § 416.927[(c)](2); *see also Schaal*, 134 F.3d at 503-504 (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ, though, is not required to discuss explicitly each factor, as long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. App'x 67, 70, 2013 WL 628072 at *2 (2d Cir. Feb. 21, 2013) ("Atwater challenges the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c). We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citation omitted).

## DISCUSSION

Plaintiff argues that the ALJ failed to "incorporate Dr. Eurenius' moderate findings, but the ALJ also failed to explain rejection [sic] that conflicts with RFC." Reply Mem. of Law 3, Sept. 14, 2017, ECF No. 14. She cites to *Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999), in support of her contention that Dr. Karl Eurenius' opinion "contained both exertional and non-exertional limitations of basic work activities of a *moderate* degree that are not contained under the umbrella of sedentary work." *Id*. at 3 n.3. After his examination of Plaintiff, Dr. Eurenius concluded, "she is *moderately* limited in bending, lifting, carrying, climbing stairs, walking, or standing. She also is *mildly* limited in lifting, carrying, and handling objects due to carpal tunnel symptoms." R. 594 (emphasis added). In *Rosa*, the Second Circuit observed the following:

> As Rosa points out, the full range of sedentary work requires more than sitting, standing, walking, lifting and carrying. "'Most unskilled sedentary jobs require good use of the hands and fingers for repetitive finger actions.'" *Sobolewski*, 985 F. Supp. at 310 (quoting S.S.R. 83-10). Rather than demonstrating Rosa's ability to meet these demands of sedentary employment, the record actually raises significant doubts as to Rosa's capacity to perform these activities.

*Rosa*, 168 F.3d at 82. The Commissioner defines the physical exertion requirements for sedentary work as:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a). The Commissioner discusses non-exertional limitations on sedentary work, stating in pertinent part:

> Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop) or bend both the spine and legs (crouch). Fine movements of small objects, such as done in much sedentary work and in certain types of more demanding work (*e.g.*, surgery), require use of the fingers to pick, pinch, *etc*....

> Where a person's exertional capacity is compromised by a nonexertional impairment(s), see SSR 83-14, PPS-105, Capability to Do Other Work — The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments.

Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985). The ALJ, in discussing application of the Medical-Vocational Rules, stated that he was using those rules only as "a framework." R. 32. The Commissioner references SSR 83-14, above, which encourages the use of a vocational expert, which the ALJ did here. *Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating A Combination of Exertional & Nonexertional Impairments*, SSR 83-14 (S.S.A. 1983). The Commissioner's ruling 96-9p states in pertinent part as follows:

> Most unskilled sedentary jobs require good use of both hands and the fingers; *i.e.*, bilateral manual dexterity. Fine movements of small objects require use of the fingers; *e.g.*, to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

*Titles II & Xvi: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996).

In her opening statement at the May 5, 2015, hearing following remand, Plaintiff's counsel said, *inter alia*, "I would ask you to take another look at the case, your honor. I think that the finding at sedentary is correct. But, I think that the use of the hands, the more significant limitations are appropriate, due to the use of the hands." R. 47.

The ALJ's hypothetical questions to the vocational expert were as follows:

> [A]ssume a hypothetical individual the same age, education, and work experience as the claimant, who has a residual functional capacity to perform a full

range of sedentary work, but with the following additional limitations: this individual must change positions briefly every 45 minutes, so in other words, sitting for 45 minutes, must be given an opportunity to stand and stretch a couple minutes, conversely standing for 45 minutes or watching for 45 minutes. Must be given the opportunity to sit for a couple minutes before resuming a former position. Individual is also limited to no more than frequent fingering and handling, and is limited to performing only simple, routine tasks.

R. 66. The vocational expert testified that Plaintiff would not be able to perform her past work with those limitations, but could perform work of an unskilled nature available in the national economy, such as: (1) preparer (DOT 700,687-062); (2) surveillance system monitor (DOT 379.367-010); and (3) addresser (DOT 209.587-010). R. 66–68. The ALJ presented a second hypothetical question, asking whether the hypothetical person in question one, if she could "do essentially no handling and fingering with all the other limitations," would that individual be able to perform any unskilled work in the economy, to which the vocational expert testified "No…." R. 68. Finally, in the third hypothetical the ALJ presented to the vocational expert, the hypothetical individual would be the same one as in the first, but "would be off task about 20 percent of the work time." R. 68. The vocational expert testified that such an individual could not perform unskilled work in the economy. In response to questioning by Plaintiff's counsel, the vocational expert testified that the individual in hypothetical one, if she had to take a break every 40 minutes for a period of 15 minutes, could not perform unskilled work in the economy. R. 69.

In her May 8, 2013, report, Nurse Practitioner Lesley A. Johnson recounted that Plaintiff "continues to be limited in what she can do secondary to bilateral hand pain." R. 417. In the same report, however, Ms. Johnson stated that Plaintiff had just completed a long drive from Florida to Rochester, New York, and that "gripping the steering wheel for any prolonged period of time caused some aching and discomfort in her hands." R. 417. After examining Plaintiff,

Ms. Johnson concluded that, "[a] job position without *repetitive* use of her hands and avoidance of pushing, pulling, or lifting over 20 pounds would be ideal." R. 417 (emphasis added). Plaintiff's treating doctor, Jeff Jones, M.D., endorsed Ms. Johnson's conclusion when he sent her notes to the Monroe County Department of Human Services as part of his medical statement about Plaintiff. R. 416.

The ALJ's hypothetical questions included the limitation that Plaintiff could do "no more than frequent fingering and handling." The Commissioner defines the word "frequent" as "occurring from one-third to two-thirds of the time." *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983). Because Dr. Eurenius concluded that Plaintiff has only "mild" limitations in lifting, carrying, and handling objects, and Dr. Jones determined that Plaintiff was restricted from "repetitive" use of her hands, substantial evidence in the Record supports the ALJ's hypothetical question that included a limitation to no more than frequent fingering and handling. Therefore, substantial evidence also supports the vocational expert's response and the ALJ's conclusion.

Plaintiff also questions the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her "depression, carpel tunnel syndrome of her bilateral hands, difficulty sitting or standing for long periods of time, status post surgeries of the left foot, and herniated discs in her lower back...are not entirely credible." R. 22–23. Plaintiff contends that the ALJ's RFC conclusion "did not contemplate chronic pain...." Pl.'s Reply Mem. 3.

In his decision, the ALJ agreed with Plaintiff's counsel that her primary physical impairment was her bilateral carpel tunnel syndrome. R. 23. The ALJ then traced the medical history

from April 2011, through May 2015. R. 23–24. He noted that during her May 14, 2015, examination by Dr. Jones, she stated that she had modified her daytime activities to avoid repetition, "and with that remains comfortable." R. 827. Dr. Jones wrote in his Assessment and Plan, the following:

> She has maintained good pain control, comparatively speaking, through her prior state with activity modification, anti-inflammatories, and splinting. I do not think there is anything clinically to be done. She has had a thorough workup. *She simply needs to avoid repetitive impact and forceful grip-and-grasp activities*. Also, no torque force activities. It should be noted that she does have significantly more aching and discomfort in the cold weather, and she should avoid occupations in damp and cold environments. This really, practically speaking, does not leave much in the way of occupational opportunity, particularly if her age, education, and prior work experience, which is all manual, are taken into account. No change in her status, and none is anticipated. Of course, may continue conservative care for now: I will see her back in 3 months, sooner if problems of an acute nature were to arise on either side.

R. 827 (emphasis added). Dr. Jones' comments do not imply Plaintiff is incapable of frequent hand manipulation, as determined by the ALJ and support the ALJ's credibility determination.

The Court now turns to Plaintiff's arguments concerning her mental capacity. She argues that the "ALJ failed to account for social interaction, stress, and workday interruptions limitations in RFC, but multiple medical opinions found such limitations." Pl.'s Mem. of Law at 24, Jul. 7, 2017, ECF No. 11-1. The ALJ determined that the severity of her mental impairments did not meet or equal a listing. R. 20. He then reviewed her activities of daily living, which Plaintiff contends he misstated in his decision. Pl.'s Reply Mem. at 4.

Plaintiff cites more than a dozen pages in the Record, but does not point to anything in particular, or make an argument as to how those cited pages support her contentions. An assessment by E. Kamin[1] on July 17, 2012, determined Plaintiff had a "mild" restriction of her

---

[1] A PhD psychological consultant. R. 52, 146; s*ee also Daley v. Berryhill*, No. 16-CV-2246 (PGG)

activities of daily living. R. 123. E. Kamin also assessed her as moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination or in proximity with others without being distracted, and complete a normal workday without unreasonable interruptions for psychologically based symptoms. R. 127. With regard to social functioning, E. Kamin determined that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. R. 126–28. Plaintiff also cites to the internal medicine examination conducted by Dr. Eurenius on July 10, 2012. R. 591. However, Dr. Eurenius made no psychological observations in his report. The court finds no mention of psychological issues in the record at pages 609–10, which Plaintiff has also cited as support for her argument.

In addition, Plaintiff cites to a Physical Residual Functional Capacity Questionnaire by Dr. Jones, which he signed on August 8, 2013. R. 720. In that document, for the question, "Is your patient a malingerer?" Dr. Jones provided no response. R. 721. For the question, "Do emotional factors contribute to the severity of your patient's symptoms and functional limitations?" He responded by checking "Yes." R. 721. In response to the question, "Identify any psychological conditions affecting your patient's physical condition," Dr. Jones wrote, "unknown." R. 721. He likewise made no response to the question asking if either physical or emotional impairments were consistent with her functional limitations, or how often during a typical workday

---

(JLC), 2017 U.S. Dist. LEXIS 118808, at *14 (S.D.N.Y. July 28, 2017) ("State psychological consultant Dr. E. Kamin reviewed the record, *id.* at 105-15, and determined on November 30, 2012, that Daley was not disabled.").

Plaintiff's pain would interfere with her attention and concentration. R. 721. In response to the question, "To what degree can your patient tolerate work stress?" he check marked the answer, "Moderate stress is okay." He did not provide a reason for his conclusion. R. 721. He responded to most of the remaining questions with the letters, "n/a." For the question, "Does your patient have significant limitations with reaching, handling or fingering?" Dr. Jones responded by checking, "Yes." He further specified that during an eight-hour workday, she could use her hands, fingers, and arms in the following manner:

|        | Hands: Grasp, Turn, Twist Objects | Fingers: Fine Manipulations | Arms: Reaching (Incl. Overhead) |
|--------|-----------------------------------|------------------------------|----------------------------------|
| Right: | 25%                               | 25% – 50%                    | 50%                              |
| Left   | 25%                               | 25% – 50%                    | 50%                              |

R. 723. Dr. Jones also responded indicating that Plaintiff's impairments were likely to produce "good days" and "bad days," but he did not answer the follow-up question about the frequency, simply writing, "unknown." R. 723.

> In response to Dr. Jones' report, the ALJ made the following determination:
>
> He opined that in an eight-hour workday, she could use her hands to handle 25% of the time, to finger 25-50% of the time, and to reach 50% of the time (Exhibit B20F at 5). In weighing this opinion, I note that electrodiagnostic studies after the claimant's carpal tunnel releases were negative, leaving little evidence of the severity of the claimant's upper extremity impairments beyond her subjective complaints (Exhibit Bl2F at 35). I give little weight regarding Dr. Jones' opinion regarding limitations of the claimant's hands. However, I give some weight to the balance of this opinion because it is partially consistent with the record as a whole.

R. 28. Plaintiff also cites to an August 20, 2013, RFC report apparently signed by Ms. Johnson. R. 735–39. Unlike the report Dr. Jones endorsed, this one does not appear to have been shown to Dr. Jones. Besides these more specific citations, Plaintiff writes in her memorandum that she reported depressive symptoms, took medication, and received some counseling, and for

that statement cites to pages 1 through 881 in the Record. Pl.'s Mem. of Law 26. She argues that the ALJ "failed to account for social interaction, stress, and workday interruptions limitations in RFC, but multiple medical opinions found such limitations," citing to the same parts of the record discussed above, and to a record from Catholic Family Center. *Id*. The Catholic Family Center documents are signed by Letitcia Alston, whose education is not specified. The ALJ does list the Catholic Family Center exhibit in his decision, R. 20, using it to support his conclusion that Plaintiff has one dysfunctional son, and mild difficulties in social functioning. R. 21. The Court finds that the medical evidence in the Records substantially supports the ALJ's conclusion.

Turning to Plaintiff's activities of daily living, Plaintiff argues that the ALJ misconstrued them. She argues he placed too much emphasis on her one-time Florida trip, surgeries, failed part-time work and school attempts. Pl.'s Mem. of Law 25; Pl.'s Reply Mem. of Law 4. First, Plaintiff argues that she was limited in daily activities, required assistance, and modified her activities to reduce her symptoms, citing to pages "14–112, 372–380, 417–436, 474, 485–486, 492–493, 506, 512–522, 542–555, 569–581, 591–597, 681, 688, 698–699, 717–724, 732–739, 747–762, 777–779, 787, 795, 799, 816–828, 835–841." Pl.'s Mem. of Law 28. As stated by the district court in Connecticut, "Plaintiff's counsel may have spent considerable time on string citations to medical evidence; however, the Court does not find the presentation of the evidence in this manner to be of assistance in reviewing the record." *Barnes v. Astrue*, No. 3:11CV01780 HBF, 2013 WL 1296498, at *2 (D. Conn. Mar. 28, 2013), *aff'd sub nom. Barnes v. Colvin*, No. 3:11-CV-1780 JCH, 2013 WL 3853446 (D. Conn. July 23, 2013). In sum, the Court finds that the Record contains substantial support for the ALJ's conclusion that

Plaintiff is capable of performing sedentary work with the limitations he specified in his decision.

## CONCLUSION

Defendant's cross-motion for judgment on the pleadings is granted; Plaintiff's motion for judgment on the pleadings is denied. The Court affirms the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Clerk will close this case.

So Ordered.

Dated: March 21, 2018
Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge